[L. A. No. 19663. In Bank. July 15, 1947.]

HARVEY S. MUDD, Appellant, v. CHAS. J. McCOLGAN, as Franchise Tax Commissioner, etc., Respondent.

HARVEY S. MUDD, as Trustee, etc., Appellant, v. CHAS. J. McCOLGAN, as Franchise Tax Commissioner, etc., Respondent.

MILDRED E. MUDD, Appellant, v. CHAS. J. McCOLGAN, as Franchise Tax Commissioner, etc., Respondent.

DOROTHY D. MUDD, Appellant, v. CHAS. J. McCOLGAN, as Franchise Tax Commissioner, etc., Respondent.

SEELEY G. MUDD, Appellant, v. CHAS. J. McCOLGAN, as Franchise Tax Commissioner, etc., Respondent.

Boyle, Holmes, Fry & Garrett and John W. Holmes for Appellants.

Robert W. Kenny and Fred N. Howser, Attorneys General, John L. Nourse, Daniel N. Stevens and James E. Sabine, Deputy Attorneys General, for Respondent.

SHENK, J.——The plaintiffs, five taxpayers, sued separately for refund of deficiency of 1936 personal income taxes assessed and paid. The actions were consolidated for trial. Judgment in each case was for the defendant Franchise Tax Commissioner, and each of the plaintiffs appealed.

The facts are similar in each case except for differences in amounts and dates. Details in the case of Harvey S. Mudd, No. 483412, will be given and the parties will be referred to as plaintiff and defendant.

The plaintiff filed his state personal income tax return for the calendar year 1936, on or before April 15, 1937. His report of net income showed a tax due of $26,972.33, which he paid. On August 28, 1940, the defendant mailed to the plaintiff a notice of additional personal income tax proposed to be assessed for the year 1936 in the amount of $5,317.88, plus interest. The plaintiff duly protested payment of the alleged deficiency, relying among other things upon the provision of section 19 of the Personal Income Tax Act of 1935 (Stats. 1935, p. 1090; Deering's Gen. Laws, 1935 Supp., Act 8494) which prescribed a three-year period from the filing of the return for mailing notice of deficiency. A hearing followed, subsequent to which the plaintiff received notice of redetermination of deficiency for 1936 in the sum of $4,408.42 plus interest, which he paid. Within due time he filed a claim for refund of the alleged overpayment and upon rejection commenced the present action.

By similar proceedings deficiency assessments were paid for the year 1936, and refunds sought by the other plaintiffs, Seeley G. Mudd as trustee, in the sum of $32,678.44; Mildred E. Mudd in the sum of $34,342.14; Dorothy D. Mudd, $2,151.72; and Seeley G. Mudd, $3,313.19—plus interest. In each case the notice of deficiency was mailed more than three years after the return was filed. Each plaintiff relied on the three-year limitation provided by the 1935 act.

The trial court ruled that the applicable statute of limitations was section 19 of the Personal Income Tax Act of 1935 as amended in 1939 (Stats. 1939, pp. 2528, 2557), which changed from three to four years the period for mailing notice of deficiency. As to each plaintiff the change became effective prior to the expiration of the three-year period, and the notice of deficiency was mailed within the four-year period.

The principal differences in matters of computation between the plaintiffs and the defendant grew out of the liquidation of Mayflower Associates, Inc., in which the plaintiffs owned large numbers of shares, and the consequent necessity for correctly computing the cost of the shares to the plaintiffs and the resulting taxable gain. The findings and conclusions of the trial court, however, reveal that any asserted error of the defendant in arriving at the amount of net taxable income was not in issue, and it is not made a ground of appeal. The question presented is whether the trial court correctly ruled that the mailing of the notice of deficiency was timely.

Section 19 of the 1935 act provided that the commissioner should examine the return as soon as practicable after filing and determine the correct amount of the tax; that if an underpayment was disclosed he should mail notice of deficiency tax within three years after the return was filed. The amendments of 1939, effective July 25, 1939, included a change from the three-year to a four-year period for mailing notice of deficiency.

Section 23 of the 1939 act declared: "This act, inasmuch as it provides for a tax levy for the usual current expenses of the State, shall, under the provisions of section 1 of Article IV of the Constitution, take effect immediately, and shall be applied in the computation of taxes accruing subsequent to December 31, 1938."

The plaintiff contends that the time provision of section 19 is a condition precedent to the exercise of a right and not a statute of limitations. Before the 1939 amendment the pertinent language of the section was: "[E]very notice of a proposed deficiency tax shall be mailed to the taxpayer within three years after the return was filed and no deficiency shall be assessed or collected with respect to the year for which such return was filed unless such notice is mailed within such period." The only change was the substitution of the word "four" for "three."

In this connection the plaintiff's main reliance is on 34 American Jurisprudence, page 16, section 7, which states with supporting authorities: "A statute of limitations should be differentiated from conditions which are annexed to a right of action created by statute. A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits. The time element is an inherent element of the right so created, and the limitation of the remedy is a limitation of the right." (For examples of application of the quoted principle, see *United States ex rel. Texas Cement Co.* v. *McCord,* 233 U.S. 157 [34 S.Ct. 550, 58 L.Ed. 893], creditors' liability on bond; *Davis* v. *Mills,* 194 U.S. 451 [24 S.Ct. 692, 48 L.Ed. 1067], special statutory liability of directors; *The Harrisburg,* 119 U.S. 199 [7 S.Ct. 140, 30 L.Ed. 358], cause in admiralty against vessel causing death by negligence committed on high seas.)

In order that the time element in the mailing of the notice of deficiency constitute a condition precedent, the statute must create a new and distinct liability as to such deficiency. However, the plaintiff's liability to pay the deficiency tax is not a liability created by section 19. For if it were so created, the ascertainment of the extent thereof would be governed by the provisions of the 1939 act. The adoption of the plaintiff's contention would therefore not avoid the application of the four-year period. But it may not be questioned that the plaintiff's total tax liability for 1936, including any deficiency, is governed by the statutory measure applicable to that year. His liability for a deficiency is part and parcel of his liability for the total tax. In fact, the word "deficiency" negatives any concept of a new or distinct liability. On the contrary, implicit therein is its relationship to the total tax. The basis of the plaintiff's total tax was a correct computation of net income. The tax became due upon the filing of the return. Any portion thereof not discharged was chargeable to and collectible from the plaintiff as a deficiency. These considerations render inconceivable any theory that the liability to pay a deficiency tax is other than a continuing liability, based on net income correctly reported, and which is not discharged upon payment of a tax determined from incorrectly reported net income. The plaintiff's duty to discharge the unpaid amount of the total tax continued as a liability to pay the deficiency tax. Section 19 of the act provided the procedural means for ascertaining and giving notice of the assessment of the deficiency. It is essentially a provision looking to enforcement. Provisions for summary methods of ascertaining and collecting taxes are recognized enforcement measures. (*People* v. *Skinner,* 18 Cal.2d 349 [115 P.2d 488, 149 A.L.R. 299]; *People* v. *Mahoney,* 13 Cal. 2d 729 [91 P.2d 1029].)

The quoted provision of section 19 is therefore a statute of limitation which bars the remedy for enforcement in the event that notice be not mailed within the prescribed time. It is sufficient for present purposes to note that the language barring assessment or collection unless the notice be so mailed does not affect the character of the time limitation as a bar to enforcement. It remains a provision which bars enforcement—by assessment or collection—in the event of failure to give timely notice. Statutes limiting the time within which the assessment and collection of taxes may be made are referred to as statutes of limitation. (See Paul and Mertens,

Law of Federal Income Taxation, vol. 5, pp. 498 et seq., §§ 50.01, 50.02, 50.47, 50.75, 50.76, 50.90 and cases cited; cf., § 50.85 referring to a statute also providing for extinguishment of liability.)

 It is the settled law of this state that an amendment which enlarges a period of limitation applies to pending matters where not otherwise expressly excepted. Such legislation affects the remedy and is applicable to matters not already barred, without retroactive effect. Because the operation is prospective rather than retrospective, there is no impairment of vested rights. Moreover, a party has no vested right in the running of a statute of limitation prior to its expiration. He is deemed to suffer no injury if, at the time of an amendment extending the period of limitation for recovery, he is under obligation to pay. (*Davis & McMillan* v. *Industrial Acc. Com.*, 198 Cal. 631 [246 P. 1046, 46 A.L.R. 1095]; *Doehla* v. *Phillips,* 151 Cal. 488 [91 P. 330]; *Weldon* v. *Rogers,* 151 Cal. 432 [90 P. 1062]; *Swamp Land District* v. *Glide,* 112 Cal. 85, 90 [44 P. 451]; *California Emp. Stab. Com.* v. *Smileage Co.,* 68 Cal.App.2d 249, 253 [156 P.2d 454]; see, also, *State Tax Com.* v. *Spanish Fork* (1940), 99 Utah 177 [100 P.2d 575, 131 A.L.R. 816].) In *Campbell* v. *Holt,* 115 U.S. 620, at page 628 [6 S.Ct. 209, 29 L.Ed. 483], it was said that statutes shortening the period or making it longer have always been held to be within the legislative power until the bar was complete. (See, also, *Florsheim Bros. D. Co.* v. *United States,* 280 U.S. 453 [50 S.Ct. 215, 74 L.Ed. 542]; Sutherland, Statutory Construction, 3d ed., §§ 1936, 2210, and cases cited.) Thus, true retroactive operation of a limitation statute is such as would revive matters that had already been barred by the lapse of time.

It is the plaintiff's contention, however, that section 23 of the 1939 act expressly excepts from the operation of the amended remedial provisions tax liability attaching prior to December 31, 1938.

The 1939 act amended eighteen sections of the Personal Income Tax Act of 1935, and added six new sections. The amendments and additions related to such subjects as gross income, exemptions, credits, capital gains and losses, deductions from gross income, items not deductible, and many details in connection therewith; also the procedural matters, payment of interest, enforcement, penalties, and the like. Section 16(f) concerned computation of the tax if changes became effective during the taxpayer's taxable year where it

differed from the calendar year. Section 23 provided that the act should "be applied in the computation of taxes accruing subsequent to December 31, 1938."

Early in the administration of the act the question arose whether the four-year period provided by amended section 19 applied to deficiencies for taxable years prior to 1939. On December 17, 1940, the attorney general addressed to the Franchise Tax Commissioner an opinion to the effect that the four-year period was applicable in all cases not already barred on the effective date of the amendment. In his letter the attorney general distinguished the many changes dealing with gross income, deductions, personal exemptions, credits, and other matters affecting the amount of the tax, from provisions concerning withholdings, penalties, procedural and remedial matters. He pointed out that the former class of provisions dealt with the computation of taxes; that the latter referred to the enforcement of the tax. He stated: "If the amendatory act had stopped after providing 'shall . . . take effect immediately . . .' the provisions relating to the computation of taxes would have had entirely prospective application and would not have been applicable in the computation of taxes accruing prior to July 25, 1939 (the effective date of the amendatory act). . . . The legislature, in enacting section 23 . . . did not stop after the words 'shall . . . take effect immediately', but added the following: 'and shall be applied in the computation of taxes accruing subsequent to December 31, 1938.' . . . Its plain purpose is to overcome the presumption against retroactivity, and to provide for a limited retroactivity of the provisions relating to the computation of taxes." He concluded that the effect of section 23 was to make retroactive the sections relative to computation of taxes, without limiting the application of the remainder of the act which became immediately controlling as to all matters of assessments, refunds, collections, and the like, excepting those which on July 25, 1939, were already barred by prior law. He added: "This conclusion is in accord with that reached in Opinion NS1998a, and with your administrative interpretation as shown in Articles 19-2 and 20-1 of the Regulations." It is in evidence that this effect of the 1939 amendments has been consistently and uniformly followed to apply the four-year limitation in the administration of the enforcement provision of section 19 where such enforcement was not already barred on the effective date of the act.

An administrative application of the language of an act is entitled to respect by the courts, and unless clearly erroneous is a significant factor to be considered in ascertaining the meaning of a statute. (*Coca-Cola Co.* v. *State Board of Equalization*, 25 Cal.2d 918, 921 [156 P.2d 1], and cases cited; *California Drive-in Restaurant Assn.* v. *Clark*, 22 Cal.2d 287, 294 [140 P.2d 657, 147 A.L.R. 1028]; *Hunstock* v. *Estate Development Corp.*, 22 Cal.2d 205, 211 [138 P.2d 1, 148 A.L.R. 968]; *Bodinson Mfg. Co.* v. *California Employment Com.*, 17 Cal.2d 321, 325-326 [109 P.2d 935], and cases cited; *Dillman* v. *McColgan*, 63 Cal.App.2d 405, 409 [146 P.2d 978].)

▮ In the absence of an express provision that the changes or additions relating to assessment and collection did not apply to existing tax liability, it would follow that the four-year statute governs in the present cases. ▮ The language of section 23 that the act, effective in July, 1939, should be applied in the computation of taxes accruing subsequent to December 31, 1938, is a general provision for retroactive operation from January 1, 1939, in the matter of computing the tax liability for the taxable years beginning January 1, 1939. It is usual and proper for the legislative body to provide that a taxing statute enacted in the course of a tax year should relate back to the beginning of the year in the computation of tax liability for the current year. (See *United States* v. *Hudson*, 299 U.S. 498 [57 S.Ct. 309, 81 L.Ed. 370]; *Zellerbach Paper Co.* v. *Helvering*, 293 U.S. 172, 176-177 [55 S.Ct. 127, 79 L.Ed. 264]; *Florsheim Bros. D. Co.* v. *United States, supra*, 280 U.S. 453; *American States W. S. Co.* v. *Johnson*, 31 Cal.App.2d 606, 613 [88 P.2d 770]; note, 109 A.L.R. 523 and cases cited.) In this case the obvious purpose of the relation back was to prevent application of different taxing provisions for the portion of the calendar year antedating the effective date of the statute. The relation back achieves the plain object of the Legislature to impose liability for the entire current and following years on the basis of the revised taxing provisions. Such retroactive operation is not inconsistent with the recognized prospective effect of the amended enforcement provisions, unless the Legislature has also expressly declared that changed enforcement and time limitation provisions are not to apply to pending matters. Manifestly a declaration that the provisions of the act are to apply retroactively to computation of taxes in order to

determine the new tax liability does not amount to a declaration that amended enforcement provisions are not to apply to existing liability. There is therefore no express declaration in section 23, or otherwise, that the enforcement provisions of the act should not apply to such liability. Furthermore, in 1941, in again amending the Personal Income Tax Act (Stats. 1941, p. 3042), the Legislature, by a change in the language of the section providing for immediate effect, appears to have adopted the administrative application of the limited retroactive provision of section 23 of the 1939 act. The language of section 24 of the 1941 act restricts the general retroactive clause to provisions effecting changes in the computation of taxes, meaning those affecting income, deductions, rates, methods of calculating tax, exclusions, exemptions and credits. The Legislature also implied that the change in wording was not to indicate that a change in meaning was intended. In *White* v. *Winchester Country Club,* 315 U.S. 32 [62 S.Ct. 425, 86 L.Ed. 619], administrative interpretation of a prior provision in a revenue law and subsequent legislative definition in accord therewith was held acceptable evidence of the legislative intent. We see no reason why such evidence is not equally acceptable here. There is no showing that the administrative application is erroneous. On the contrary it is in accord with legal principles, and places no strain upon the statutory language.

The plaintiff's reliance upon *Russell* v. *United States,* 278 U.S. 181 [49 S.Ct. 121, 73 L.Ed. 255], is unavailing to control a different result. That case involved a provision in a taxing statute which increased from five to six years the period for collection after assessment, but which also provided that it should not affect any assessment made, or distraint or proceeding in court begun, before the enactment thereof. The Supreme Court concluded that the obvious design was to deprive the provision of any possible application to cases where assessment had been made prior to the effective date. (But compare *Pacific Coast Steel Co.* v. *McLaughlin,* 288 U.S. 426 [53 S.Ct. 422, 77 L.Ed. 873], as to the effect of the same provision on waivers in respect to assessments made before the effective date of the amendment.) The Russell case therefore involved an express exception of pending matters from the operation of the amended time limitation provision. The decision in that case and cases following it (see *Commissioner of Internal Revenue* v. *Ricker,* 77 F.2d

810; *Dobbins* v. *Commissioner of Internal Revenue*, 31 F.2d 935; *Rasmussen* v. *Brownfield-Canty Carpet Co.*, 31 F.2d 89) is consistent with the conclusion that here there is an absence of an express exception and that the contrary result should obtain. That conclusion is in accord with the general rule as to the applicability of remedial provisions to pending causes and matters unless expressly excepted; and the foregoing discussion demonstrates that the rule applies in the matter of enforcing existing tax liability.

The trial court therefore correctly ruled that section 19 of the Personal Income Tax Act of 1935 as amended by the 1939 statute governed in the present cases, and that the mailing of the notice of deficiency in each was timely.

The judgment in each case is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Schauer, J., Spence, J., and Peek, J. pro tem., concurred.